IKUTA, Circuit Judge,
concurring in part, dissenting in part:
Because the Cottonwood project was not a “reasonably foreseeable” future action at the time the Bureau of Land Management (BLM) prepared the Sampson Cove Project environmental analysis (EA), see 40 C.F.R. § 1508.7,1 dissent from the majority’s ruling on that issue.
We do not “require the government to do the impractical.” Envtl. Protection Info. Ctr. (EPIC) v. U.S. Forest Serv., 451 F.3d 1005, 1014 (9th Cir.2006) (internal quotation marks omitted). If an agency lacks enough information about the parameters of a possible future project to “permit meaningful consideration,” it need not address the project in the EA. Id.
Here, the majority’s claim that the BLM had enough information about the Cottonwood project rests on two slim reeds that do not bear the weight placed on them. The majority says “an interdisciplinary team” made a decision about the Cottonwood project “[s]ix months before the BLM issued the Project’s EA.” Maj. at 672. But the record shows only an internal agenda entitled “Ashland RA ID Team Meeting” dated January 27, 2010, which contains one cryptic sentence: “In order to spread the due dates out more for the 2011 timber sales, we changed the specialist due dates for Cottonwood EA to November 2, 2010; to February 15, 2011 for Rio Climax, and to June 1, 2011 for Sweeper.” That’s it. Nothing in this sentence indicates the nature of the “specialist due date” for the Cottonwood EA, or what the nature or parameters of the project might be.[1]
The majority’s only other support is an internal agenda for a “Cottonwood IDT .Meeting” dated June 30, 2010, with more shorthand entries that include no information about the location or scope of the project. Based on this document, the majority claims that “less than one month before the BLM issued the Project’s EA, many elements of the Cottonwood project were already firmly established.” Maj. at 672. But only a mind reader could figure that out. The majority points to an entry stating, in full, “Silviculture prescriptions will be similar to Plateau Thin’s with a disease management component.” But the next entry shows that even the silviculture prescriptions had not been finalized: “Nate will need to do stand exams to confirm and fine tune prescriptions and marking guidelines.” And the next states: “Nate still needs to do field verification and stand exams field work this summer in Cottonwood.” Further entries suggest that key issues were still under “preliminary discussion.” For instance, with respect to recreation, the agenda states: “[wjinter rec trails — no winter hauling,” “PCT — no cut 100’ buffer,” and “[rjoad construction?” With respect to botany, the agenda states, “few issues, south part may be FRGE habitat.”
*675 To the extent we can read anything into the agenda, it establishes that the Cottonwood project was too preliminary to be “reasonably foreseeable.” See 40 C.F.R. § 1508.7. Indeed, nothing in either agenda refutes the BLM’s assertion that, at the time the Project EA was issued, the BLM had not yet determined where the Cottonwood Project would be located in a 45,370 acre area. The agendas are so lacking in specific information that had the BLM titled the agenda notes “Project Periwinkle IDT Meeting,” there would have been nary a hint that these preliminary discussions would eventually become the Cottonwood project. And other than this agenda for an internal team meeting, there’s not a single piece of information about the Cottonwood project in the record — not a single clue as to its location or scope.
We have held that a future project was “reasonably foreseeable” when the project has been formally proposed, see Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation, 655 F.3d 1000, 1010 (9th Cir.2011) (“We have define[d] ... reasonably foreseeable action[s], for which cumulative impacts must be analyzed, to include proposed actions.” (alterations in original) (internal quotation marks omitted)), or when the agency issues “a press release and Notice of Intent,” N. Alaska Envtl. Ctr. v. Kempthorne, 457 F.3d 969, 980 (9th Cir.2006); see also Ctr. for Envtl. Law & Policy, 655 F.3d at 1010 (“[W]e have previously held that an action is not too speculative to qualify as a proposed action when the agency issues a notice of intent to prepare an EIS.” (internal quotation marks omitted)). But we have never held that a possible future project, documented only in notes from an internal meeting listing action items related to future development of the project, was “reasonably foreseeable” and “not too speculative.” See Jones v. Nat’l Marine Fisheries Serv., 741 F.3d 989, 1000 (9th Cir.2013) (“For any project that is not yet proposed, and is more remote in time, by contrast, a cumulative effects analysis would be both speculative and premature.” (internal quotation marks omitted)). Here, the BLM did not issue a notice of intent to prepare an EIS, and the agenda notes that do exist “are speculative and have not been reduced to specific proposals.” See id.; see also EPIC, 451 F.3d at 1014-15 (concluding that the Forest Service properly excluded a future project from its cumulative impacts analysis because the project was “in the initial planning stage” and the parameters of the project, including “specifics of the units (size and treatment prescription),” had not been identified at the time of the EA). Indeed, the BLM did not begin the scoping process, see 40 C.F.R. § 1501.7 (explaining that “scoping” is the process “for determining the scope of issues to be addressed and for identifying the significant issues related to a proposed action”), for the Cottonwood project until more than two months after the Sampson Cove EA was issued.
The plaintiffs have the burden of proving that the BLM acted arbitrarily in failing to include the Cottonwood project in its cumulative impact analysis, and absent a showing of arbitrary action, we must assume that the BLM has exercised its discretion appropriately. See 5 U.S.C. § 706(2)(A); Kleppe v. Sierra Club, 427 U.S. 390, 412, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976). Here, the two agendas at issue — the only evidence adduced by the plaintiffs — fail to show that any of the significant parameters of the Cottonwood project were known at the time of the Project EA. We should therefore defer to the BLM’s assertion that at the time it prepared the Sampson Cove EA, the Cottonwood project was not far enough along for it to be reasonably foreseeable. See Kleppe, 427 U.S. at 412, 96 S.Ct. 2718. We *676 have no authority to fault an agency for failing to consider the cumulative impacts of contemplated future projects before there is an “actual plan or proposal that was sufficiently well-defined to permit meaningful consideration” of the cumulative'impact of the project. See Jones, 741 F.Bd at 1001 (internal quotation marks omitted).
Because the BLM appropriately excluded the Cottonwood project from its cumulative impact analysis, I would affirm the district court.

. The majority states that this note indicates that the Cottonwood project was "certain to occur." Maj. at 672. The question, however, is not whether a project is "certain to occur,” but rather whether there is enough information available about the project to permit meaningful consideration of its cumulative impacts. See EPIC, 451 F.3d at 1014.